THE STATE OF NEW JERSEY v. C. GORDON WARE.

Submitted January 22, 1904—Decided July 28, 1904.

1. In an indictment under section 175 of the Crimes act (*Pamph. L.* 1898, *p.* 842) for publishing a false statement with intent to induce any person to entrust property to a body corporate, it is not necessary to aver the particular person who was to be or was influenced by the statement.

2. Upon the trial of an indictment of a director of a corporation for publication of a false statement under section 175 of the Crimes act (*Pamph. L.* 1898, *p.* 842), the state was permitted to prove that the business of a copartnership, to which the corporation was the immediate successor, was held up as fraudulent by the newspapers. *Held*, that the admission of the evidence was erroneous.

On error to the Essex Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices DIXON, HENDRICKSON and SWAYZE.

For the state, *Louis Hood*.

For the defendant, *Neilson Abeel*.

The opinion of the court was delivered by

SWAYZE, J. The defendant was convicted on an indictment under section 175 of the Crimes act. *Pamph. L.* 1898, *p.* 842. The section reads:

"Any person who, being a director, manager or public officer of any body corporate or public company, shall make, circulate or publish, or concur in making, circulating or publishing any written statement or account which he shall know to be false in any material particular, with intent to deceive or defraud any member, shareholder or creditor of any such body corporate or public company, or with intent to induce any person to become a shareholder or partner therein, or to entrust or advance any property to such body corporate or public company, or to enter into any security for the benefit thereof, shall be guilty of a misdemeanor."

The indictment contains two counts. The first charges that the defendant, being a director of the North American Realty Company, a body corporate, did make, circulate and publish, and did concur in the making, circulating and publishing of a certain written statement (which is set forth in full), well knowing it to be false in material particulars (which are set forth and the falsity of which and the knowledge of the defendant averred), with intent to induce every such person as should become a purchaser of a contract of the North American Realty Company to entrust to the company money of a specified amount.

The second count differs only in the averment that the intent was to induce divers persons of Essex county and the public generally to entrust money to the corporation.

This summary of the indictment is sufficient to show that it follows the language of the statute in charging one of the statutory offences.

It is argued that the indictment is defective because it fails to show what person or persons were induced to entrust their money to the company. This argument involves a misconception of the crime as defined by the statute. That crime is the publication of a statement known to be false, with intent to induce any person to entrust property to the body corporate, and it is not essential to show that the false statement was intended to influence a particular person. It is quite enough that it was intended to influence the public. The motion to quash the indictment was properly denied.

One of the alleged false statements was a statement that the company had purchased for P. A. Anderson a farm for $4,000, and another was the statement that it had purchased a farm for B. Osterdahl for $2,700. The proof was that agreements to purchase had been made by the company with the owners of the lands, by the terms of which the purchase price was to be paid in monthly installments, the first payment in each case to be made after the date of publication of the alleged false statement.

Whether the proof justified a finding of the falsity of the statement that these farms had been purchased, depends upon the meaning to be given to the word "purchased." It may mean a completed transaction, as the state contends, or it may mean a transaction still incomplete. It is unnecessary to resólve this doubt on the present record, for the judgment must be reversed upon another ground.

Upon cross-examination of the defendant, he was asked: "Did you know that almost from the very beginning the business of the United States Company was held up as fraudulent by the papers of the town?"

The United States Company was a firm of which the defendant was a member, and the immediate predecessor in business of the North American Realty Company.

To this question objection was made and overruled, and an exception was taken. The reason given by the learned trial judge for admitting the testimony was that the defendant's knowledge that the newspapers had characterized the business of the United States Company as fraudulent "would be pertinent to the issue of whether or not he knew that the circulars put out by the North American Realty Company were false."

In the charge the subject is thus dealt with:

"You were permitted to be told that a certain newspaper had called this scheme a fraudulent scheme. That should not in any way prejudice you against this defendant on this issue. He is not on trial, gentlemen, charged with having conducted a fraudulent scheme by fraudulent methods; he is charged simply with doing what is here set forth in the indictment, but that circumstance may be such a one, in your

opinion, as would call upon—I mean that the newspaper had denounced this scheme as fraudulent—you may consider that such a circumstance as would call upon the officers of the company to be careful in any representations that they might thereafter make to induce the public to go into their scheme, and to use words carefully, and in their true meaning, rather than loosely."

We think the admission of the testimony was erroneous. The fact that a newspaper had denounced the scheme of the United States Company as fraudulent did not, in our judgment, tend to prove anything as against the North American Company. The newspaper's charge may have been based upon the fact that the United States Company was a co-partnership under the name of a corporation, and this objection was not applicable to the North American Realty Company.

Aside from that consideration, moreover, we fail to see how a newspaper charge that the business of the United States Company was fraudulent tended to prove that a statement published several months later by the North American company was known by the defendant to be false. In the charge, the judge's reasoning is that such a newspaper attack tended to make the defendant more careful in his statements; but if we grant that, it still does not tend to prove that he knew the statement made to be false. Nor can we see how the newspaper publication, in August, throws any light upon the meaning to be attributed to the words of the circular, issued in December. Assuming that the publication called upon the officers of the company to "use words carefully, and in their true meaning, rather than loosely," it still fails to throw any light upon the meaning to be attributed to the words which were in fact used in the circular.

That evidence of the newspaper charges was harmful to the defendant is clear, and for this error the judgment must be reversed and the record remitted to the Essex Quarter Sessions for a new trial.